FIRST STATE BANK OF LEMMON, SOUTH DAKOTA, Appellant, v. STOCKMEN'S STATE BANK, FAITH SOUTH DAKOTA, Respondent.

(176 N. W. 646.)

(File No. 4577.    Opinion filed February 19, 1920.    Rehearing denied March 26, 1920.)

1. **Banks and Banking—Accommodation Draft by Plaintiff to Defendant Bank to Cover Sight Draft on Latter, Depositor's Checks on Defendant Bank to Cover, Delivered to Plaintiff, Whether Checks, Drawer's Account, Guaranteed—Evidence Considered.**

A sight draft through defendant bank on H, a depositor, was taken by a bank cashier to depositor's place of residence for purpose of collecting same, whereupon H. wrote out a check to plaintiff bank on defendant bank to cover the draft, defendant's cashier requesting B., an officer of plaintiff bank, to give his bank a draft for the amount in question, that he might immediately send it direct to drawer of sight draft, and save time, at the same time turning over H's check to B; H. stating to defendant cashier that he had funds in defendant bank to cover the check, that he had sent a sum nearly sufficient to cover the draft, to the bank, B. stating "Yes, I know that Mr. Z. had taken down $4000," defendant's cashier replying, "If that is the case, alright, that is different;" the check being thereafter regularly forwarded to defendant bank for payment, which was refused for want of "sufficient funds;" trial court finding that the money sent by Z. was not H's deposit either on account or specially, but was for partial payment of his bank indebtedness, and that H. paid defendant bank the sight draft by procuring from plaintiff bank and delivering to defendant the draft issued by B, that H. delivered said check to plaintiff and plaintiff accepted it in payment for the draft, that defendant did not accept, certify or guarantee the check nor instruct or request H. to draw the check, that neither defendant nor its officers represented, guaranteed or warranted, that the check would be paid or that there was sufficient funds in defendant's hands with which to pay it, or that any deposit had been made by H. to pay said check or said sight draft, nor induced plaintiff to

issue its draft, but that it was issued upon the sole act and statement of H. **Held,** that said findings were unsupported by evidence; that defendant did, by its cashier, request plaintiff to issue the draft, and represented that H. had sufficient funds in defendant bank to pay for check when presented and that it would be so paid, that such representations induced plaintiff to issue the draft; that defendant did not accept H's check before it was turned over to plaintiff; that plaintiff did not base its cause of action upon an alleged acceptance by defendant, but upon an implied agreement to honor the check upon presentation, and an estoppel to denying such agreement; that plaintiff had no interest in the transaction, the draft being issued for sole purpose of accommodating defendant; that defendant's cashier knew that B. understood and assumed when he gave him the draft, that the money that H. had sent to defendant bank by Z. would be used to pay H's check, and when defendant's cashier delivered the check to plaintiff he represented it would be paid on presentation; and defendant will not, after bank draft was paid, be heard to say the check was not good and should not be honored.

2. **Bank sand Banking—Check, Draft, Acceptance of Under Negotiable Instruments Law, By Indorsement Only.**

Acceptance of a check or draft, under our Negotiable Instrument Law, can be made only by an indorsement in writing signed by party making acceptance; Laws 1913, Ch. 279, Sec. 131.

3. **Banks and Banking—Depositor's Check, Delivered by Drawee Bank to Plaintiff for Accommodation Draft, Drawer's Direction Not to Pay, Whether Defense.**

Where a depositor's check was delivered by drawee bank's cashier to plaintiff bank, with statements amounting to representations that drawer had sufficient funds in defendant bank to cover it, and plaintiff bank in consideration thereof issued an accommodation draft to said cashier, held, that the fact that drawer directed defendant bank not to pay the check is no defense to its non-payment.

4. **Banks and Banking—Drawer's Check Delivered by Drawee to Plaintiff Bank for Accommodatiion Draft—Non-demand of Payment After Check Dishonored, Whether Acquiescence in Refusal, or Waiver.**

Where plaintiff bank, to whom a check drawn by a depositor in defendant's bank was by latter delivered to plaintiff in consideration of issuance by latter to former of a draft by way of accommodation, failed for several months after dishonor of the check to demand payment thereof, such silence did not amount to acquiescence in defendant's refusal to pay check, or waiver of any right plaintiff may have had thereon; nor was the fact

that defendant bank for several months after date of check had sufficient of drawer's funds to pay the check, any excuse for not paying same.

Appeal from Circuit Court, Meade County. Hon. JAMES McNENNY, Judge.

Action by First State Bank of Lemmon, South Dakota, a corporation, against Stockmen's State Bank, Faith, South Dakota, a corporation, to recover upon a dishonored check. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

*P. J. Tscharner,* and *W. D. Hickman,* for Appellant.

*Horner, Martens & Goldsmith,* for Respondent.

(1) To point of the opinion, Appellant cited, re special deposit: First Nat. Bank. v. Barger (Ky.), 115 So. 726; Ballard v. Home Nat. Bank of Arkansas City (Kans.), 136 Pac. 935; Gruenther v. Bank of Monroe (Neb.), 133 N. W. 402.

POLLEY, J. Plaintiff is a banking corporation, engaged in the banking business at Lemmon, and defendant is a banking corporation, engaged in the banking business at Faith, a distance of some 80 miles from Lemmon. One C. P. Halver was a depositor in the defendant bank. On or about the last day of October, 1917, one O. B. Parham, of Billings, Mont., drew a sight draft for $11,995 on the said Halver, through defendant bank. This draft reached the defendant bank on or before the 2d day of November, and on the 3d day of November one Steil, cashier of defendant bank, took said draft to Lemmon, where Halver then resided, for the purpose of collecting the same. Just what transpired between Stein and Halver, relative to the draft, between the 3d and 6th days of November, is not clear, but on the evening of November 6th Steil and Halver and one Bennet, vice president of plaintiff's bank, met in plaintiff's bank, when the matter of the payment of said draft and one or two other drafts was discussed at some length. In regard to what took place at that time, Steil testified as follows:

"Mr. Halver went in to write out the checks for those drafts, and he started to write out the check for the Miles City draft, and then he says, 'I am going to draw this check for $11,995 on your bank,' and I asked him if he had sufficient funds there to take care of this check. He said he sent down

$14,600 in currency by Zeman [defendant's vice president] and a note. And Mr. Bennett says: 'Yes; I know that Mr. Zeman had taken down $14,600.' And I says: 'If that is the case, all right. That is different.' After that Mr. Halver had made out checks and laid them before me, and I requested Mr. Bennett if he would give me drafts for these checks, so that I could mail out the drafts to the proper parties. Mr. Bennett gave me a draft for $11,995. * * * I turned this check of Halver's over to Mr. Bennett. Halver made the check, and I shoved the check over to Mr. Bennett, and asked for the draft. The check was laid before me, and I shoved it over to Mr. Bennet. When Mr. Halver wrote out the checks he laid them before me, just laid them there, and I shoved the checks over to the other side of the desk to Mr. Bennett. I requested draft, so that I could send them out to these parties, so that I could get them there in quicker time. I told Mr. Bennett I wanted to get them there quicker. I remember of requesting the drafts. I do not recollect whether I asked Mr. Bennett to give me the draft as an accommodation. I was anxious to get the money for this Parham sight draft because it would save me two days of the draft in transport."

Bennett took the check and issued and delivered to Steil a draft for the full amount of the check. The check was then forwarded by plaintiff, through its regular correspondents, and on the 12th of November it was presented to defendant for payment. Defendant refused payment, and gave as a reason for such refusal that there were "not sufficient funds." Halver testified that the $14,600 that he gave to Zeman (defendant's vice president) on November 3d was given to him for the express purpose and with the distinct understanding that it was to be used, so far as necessary, for the payment of the Parham draft. This was denied by defendant, and upon this question the trial court found:

"That the said sum of $14,600 was not given to the defendant bank by said Halver as a deposit to the credit of his account in said defendant bank, nor as a specific deposit, nor as a deposit for any specific purpose, but was made as a partial payment upon his indebtedness owing to the defendant bank."

And the court further found, relative to the payment of

said Parham draft, that Halver paid the defendant bank said sight draft by procuring from the plaintiff bank and delivering to the defendant bank a draft drawn by the plaintiff on the Stockyards National Bank of South St. Paul, Minn., made payable to the Continental & Commercial National Bank of Chicago; that, in procuring said draft, said Halver executed and delivered to the plaintiff his check drawn on the defendant bank, dated November 6, 1917, in the sum of $11,995, payable to the plaintiff bank, and the said plaintiff bank accepted said check in payment for said draft so drawn by it; that the defendant did not accept, certify, nor guarantee the said $11,995 check in any manner or form, nor did the defendant bank or any of its officers ask, instruct, or request said Halver to draw said check upon said defendant bank, nor to make said check payable to the plaintiff bank; and that said defendant bank, or any of its officers, did not, at any time, make any representations, guaranties, or warranties that said check would be paid upon presentation, or that there was sufficient funds in the hands or under the control of said defendant with which to pay said check; nor did the said defendant bank, or any of its officers, make any statements ,representations, or warranties that said C. P. Halver had made a specific purpose of paying said check or said sight draft so drawn by O. B. Parham; nor did the said defendant bank, by any act or statement, fraudulent or otherwise, induce the plaintiff bank to issue its said draft, but that said draft was so issued by the plaintiff upon the sole act and statement of said C. P. Halver.

Findings and conclusions were in favor of defendant generally, and from a judgment entered thereon and an order denying a new trial, plaintiff appeals.

[1, 2] Appellant's assignments are numerous, but they need not be considered in detail. It is contended by appellant that the findings above set out are not supported by the evidence; that the defendant did in fact, by its cashier (Steil) request plaintiff to issue the draft in question; that it did represent that, at that time, Halver did have a sufficient deposit in its bank to pay said check when it was presented; that same would be paid on presentation; and that it was such representations so made by Steil that induced plaintiff to issue said draft.

With these contentions we are constrained to agree. Of course there was no acceptance by defendant of Halver's check before it was turned over to plaintiff. Acceptance of the check or draft, under our Negotiable Instrument Law, can be made only by an indorsement in writing, and signed by the party making such acceptance. Section 131, c. 279, Laws 1913; section 1835, Code 1919. But plaintiff is not basing its cause of action upon an alleged acceptance by defendant, but upon an implied agreement to honor the check on presentation and an estoppel to deny such agreement. Neither was said check certified nor expressly guaranteed, but there is no evidence to support the finding that defendant did not instruct or request Halver to draw a check upon defendant's bank, nor to make said check payable to plaintiff. Neither does the evidence support the finding that the defendant did not make any representations, guaranty, or warranty that the check would be paid on presentation, or that it did not request plaintiff to issue the draft. Plaintiff had no interest in the transaction. The draft was issued for the sole purpose of accommodating the defendant, and for the reason, as given by Steil at the time and admitted by him when on the witness stand, that if plaintiff would issue him a bank draft for the amount of the sight draft he then held, he could forward it at once and get it to the drawee a day or two sooner than if he were to wait until he could return to Faith and issue the draft at his own bank. The fact that $14,600 had been sent to defendant's bank on November 2d was talked of by all three parties at the time, and Steil knew that Bennett understood and assumed, when he gave Steil the draft, that the money that Halver had sent down to defendant's bank by Zeman would be used to pay Halver's check; and when Steil shoved Halver's check over to Bennett, as he said he did, and requested and received the draft in consideration therefor, he represented to Bennett that the check would be paid on presentation. He, as the cashier of defendant's bank, knew the condition of Halver's account at defendant's bank at that time, and knew whether there were sufficient funds with which to pay the check; and, if there were not sufficient funds on hand for that purpose, or if he did not intend to pay the check when presented, then and there was the time

to make such fact known. Having led plaintiff to believe that the check was good, and that it would be honored when presented, and having induced the issuance of the draft on the strength of such belief, defendant will not, after the bank draft has been paid, be heard to say that the check was not good and would not be honored. To permit Steil to say that he knew, when he shoved Halver's check over to Bennett and requested the issuance of a bank draft therefor, that the check was worthless and would not be paid on presentation would be to permit him to say that he intended by his acts to perpetrate a fraud upon plaintiff. This he will not be permitted to do.

[3, 4] At the trial defendant gave as a further reason why it did not honor Halver's check on presentation that, between the dates of its issuance and its presentation for payment, Halver directed defendant not to pay it. But, under the circumstances as above set out, no direction of Halver's could excuse defendant for not paying the check on presentation. When Bennett, in Halver's presence and with his consent, took the check in payment for the draft delivered to Steil, then, in equity and good conscience, it was the duty of defendant to pay the check on presentation. Lastly, it is contended by respondent that, after the presentation and refusal of payment by respondent of the check on the 12th day of November, appellant made no further demand for payment of the check, nor in any manner signified his intention to hold respondent liable thereon, until the latter part of the following January; that this silence on the part of appellant amounted to an acquiescence in respondent's refusal to pay the check and a waiver of any right appellant might have had thereon. This silence by appellant was wholly unexplained, but, in the absence of any act on the part of plaintiff other than mere silence, we do not believe the time was unreasonable, or that appellant should be held to have waived its right of recovery on the check. If it is true, as stated by respondent, that up until November 14th it had under its control sufficient of Halver's money and property to have paid off all Halver's obligations to it, including the check involved, then respondent is without any excuse whatever for not paying the check and so protecting itself. It had no reason, at the time the check was presented, to suppose that appellant

intended to waive its right under the check, and if respondent entertained any doubts on the matter such doubts could have been cleared up instantly by a call over the telephone.

The judgment and order appealed from are reversed.