HOME SAVINGS BANK, Appellant, v. GENERAL FINANCE CORPORATION, Respondent.*

*April 8—May 3, 1960.*

* Motion for rehearing denied, with $25 costs, on June 28, 1960.

418

For the appellant there were briefs by *Glassner, Clancy & Glassner* and *Arnold, Philipp & Murray,* all of Milwaukee,

and oral argument by *William E. Glassner, Jr.,* and *Suel O. Arnold.*

For the respondent there was a brief by *Kohner & Howard* and *Goldenberg & McKay,* attorneys, and *Samuel Goldenberg* of counsel, all of Milwaukee, and oral argument by *Samuel Goldenberg* and *J. Curtis McKay.*

FAIRCHILD, J.   Plaintiff bank points out that it is not attempting to recover from General Finance upon an accepted bill of exchange. ". . . The acceptance must be in writing and signed by the drawee. . . ." Sec. 118.07, Stats. Plaintiff bank does claim, however, that General Finance orally promised to accept the draft if the bank would certify the $9,700 check payable to General Finance; that the bank did so, and thereby accepted the offer and furnished consideration for the promise; that no statute requires such contract to be in writing to be enforceable. Secondly, plaintiff bank claims a cause of action for restitution of unjust enrichment. Another theory supported in some of the decisions was also considered by the circuit court, but rejected. This theory is that the promisor, General Finance, was estopped from raising the defense that its acceptance must be written.

1. *Separate-contract theory.* "If an acceptance or promise to accept is unenforceable under the statute because it is not in writing, it is well settled that the drawee is liable neither on the bill nor on the promise, though if other consideration is given for the promise, as distinguished from the consideration supporting the bill, it should be binding as a simple contract." 4 Williston, Contracts (rev. ed.), p. 3435, sec. 1195. This theory appears to have been followed in several cases cited in Beutel's, Brannan, Negotiable Instruments Law (7th ed.), pp. 1229–1231, sec. 132. The difficulty we have with it is that if fully and logically followed, it would erode or evade the statutory requirement that an acceptance be written. A drawee's promise to accept or pay an outstanding bill is scarcely distinguishable from "signification by the drawee of

his assent to the order of the drawer," the definition of acceptance in sec. 118.07, Stats., requiring an acceptance to be in writing. Even where an acceptance be written, if it is written on a paper other than the bill, it does not bind the acceptor except in favor of a person to whom it is shown and who, on the faith thereof, receives the bill for value. Sec. 118.09. It can be implied, we think, from these two sections that an oral acceptance does not bind the acceptor even in favor of a person to whom the oral acceptance is directly communicated, and who, on the faith thereof, receives the bill for value. If this be not implied, then any person to whom the oral assent was directly communicated by the drawee and who, in reliance thereon, parted with value could claim an enforceable oral promise on the separate-contract theory.

2. *Estoppel.* "On the other hand, some cases have held that the drawee's misleading conduct in addition to such oral statement or promise may estop him to deny an acceptance in writing even under the act." Williston, *op. cit.,* p. 3436.

One decision which appears to be based upon such estoppel, although the separate-contract theory was also suggested, is *First State Bank v. Stockmen's State Bank* (1920), 42 S. D. 585, 176 N. W. 646. In that case, a representative of defendant bank was attempting to collect a draft from one Halver so that it could transmit the proceeds to the drawer. Defendant's representative met Halver in another town at the office of plaintiff bank. Halver drew a check on defendant for the amount of the draft, and defendant's representative gave this check to plaintiff and asked plaintiff to issue its own draft in return. Under the circumstances, defendant could save time by obtaining a draft from plaintiff and transmitting it as the proceeds of the draft on Halver which it was collecting. When Halver's check was presented to defendant bank, payment was refused because of insufficient funds. Plaintiff was granted recovery, and the court said (42 S. D. 591, 176 N. W. 648): "Having led plaintiff to believe that the

check was good, and that it would be honored when presented, and having induced the issuance of the draft on the strength of such belief, defendant will not, after the bank draft has been paid, be heard to say that the check was not good and would not be honored."

In the instant case, the circuit court considered the theory of estoppel although not expressly pleaded, and although plaintiff disclaims any attempt to recover upon the sight draft as if it had been accepted. The circuit court rejected this theory because of Mr. Kruyne's familiarity with banking, his knowledge of the law's requirement that an acceptance be in writing, his knowledge of Schenk's precarious financial condition. The court determined that under the circumstances plaintiff bank did not show sufficient diligence to be entitled to invoke the equitable doctrine of estoppel. We are of the opinion, however, that the theory of plaintiff's fourth cause of action, restitution of unjust enrichment, produces a result entirely equitable to plaintiff and deem it unnecessary to determine under what, if any, circumstances, a drawee would be estopped from relying upon the statutory requirement that an acceptance be in writing, or to review the reasons given by the circuit court for not applying the theory of estoppel here.

3. *Unjust enrichment.* The essential elements of quasi contract are a benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof. *Kelley Lumber Co. v. Woelfel* (1957), 1 Wis. (2d) 390, 391, 83 N. W. (2d) 872. The conferring of the benefit and appreciation by defendant are clear.

It also seems clear that at least as to a part of the money, retention by General Finance is inequitable. It is beyond belief that General Finance could have obtained cash for the $9,700 check in any way except by persuading the bank pres-

ident that the draft would be honored. No matter how gullible or careless it may have been for the president to rely upon an oral acceptance, the retention of the bank's money after refusal to honor the draft as promised cannot be considered equitable.

$3,080.56 was the balance in Schenk's account when the check was certified. The record does not disclose the payment of any checks by the bank after that except the one for $9,700. We think the amount which General Finance cannot equitably retain is the difference between $9,700 and $3,080.56, or $6,619.44.

In a somewhat-similar case, the supreme court of Utah permitted a bank to recover from a finance company although the principle of unjust enrichment was not mentioned by that name. *Farmers & Merchants Bank v. Universal C. I. T. Credit Corp.* (1957), 6 Utah (2d) 413, 315 Pac. (2d) 653. There, defendant finance company presented to plaintiff bank 10 checks drawn on the bank by an automobile dealer. Plaintiff paid the checks. There were not sufficient funds to the credit of the automobile dealer unless certain drafts drawn by the dealer on the defendant already deposited in the bank, and which an officer of defendant had orally promised to honor, were paid. The court approved findings that defendant was aware of this, but that the bank, because of its reliance upon the oral promises, did not know that there were no funds available with which to pay the checks. Later the defendant refused to honor the drafts. The court stated that it applied the following principle (p. 416) :

" 'If the payee of a check has knowledge that there are no funds on deposit to meet it, and the bank pays the check in ignorance of that fact, there may be a recovery of the payment. *Peterson v. Union Nat. Bank,* 52 Pa. 206, 91 Am. Dec. 146.' "

In granting recovery, the court said that the balance in the dealer's account of the "good credit received from other

sources" should be offset against the total amount of the 10 checks.

It has been suggested that since an acceptance of a bill must be in writing in order to be enforceable, it is against public policy to grant restitution in the situation here present. This question is considered in Restatement, 2 Contracts, sec. 355. In comment *a* of sub. (1), p. 615, it is said:

"The parties to a contract that is rendered unenforceable by the statute of frauds or some similar statute very frequently act in reliance on it by rendering the agreed performance, in part or in whole, or by making improvements on land that is the subject matter of the contract. In such cases, the refusal of all judicial remedy would result in harm to one party and unjust enrichment of the other. Therefore, restitution is enforced even though the statute makes other remedies unavailable."

An exception is stated as follows:

"(3) The remedy of restitution is not available if the statute that makes the contract unenforceable so provides, or if the purpose of the statute would be nullified by granting such a remedy."

In a recent case, we said:

"Under the theory of unjust enrichment it is immaterial whether the defendant and the plaintiff entered into a void contract. The plaintiff is not seeking to have the defendant perform the alleged contract. It is seeking the return of its money. Money paid under an oral contract void because of the statute of frauds may be recovered on the theory that it was paid without consideration because the law implies a promise of repayment when no rule of public policy or good morals has been violated." *Arjay Investment Co. v. Kohlmetz* (1960), 9 Wis. (2d) 535, 538, 101 N. W. (2d) 700.

An illustration of the exception above referred to is found in *Hale v. Kreisel* (1927), 194 Wis. 271, 215 N. W. 227, where it was held that a real-estate broker could not recover

for his services upon *quantum meruit* where he did not have a contract in the form required by statute. See also *Garvey v. Wenzel* (1956), 272 Wis. 606, 76 N. W. (2d) 291. The statute requiring a real-estate broker's commission contract to be in writing is intended to protect against unfair dealing, as well as to promote greater certainty of proof of contracts. The purpose of requiring an acceptance to be in writing seems to us to fall within the latter class, and not to prevent the remedy of restitution where one party has paid money to another in reliance upon an oral and therefore unenforceable contract.

Reference has been made in the pleadings, evidence, and briefs to the fact that General Finance, after dishonoring the draft, took possession of the automobiles, title to which was offered as security for the draft. General Finance realized $5,900 when these automobiles were sold. The record does not suggest what right General Finance had, or claimed to have, to the possession of the cars, or their proceeds, after dishonoring the draft. The bank did not, however, attempt to spell out any theory under which it acquired an interest in these cars, or their proceeds, although prior to litigation the bank demanded that General Finance return the cars if it did not pay the sight draft.

*By the Court.*—Judgment reversed; cause remanded with instructions to enter judgment for plaintiff in the amount of $6,619.44, with interest and costs.