**EARTHMOVERS OF FAIRBANKS, INC., Appellant,**

v.

**PACIFIC INSURANCE COMPANY, Appellee.**

No. 4222.

Supreme Court of Alaska.

July 18, 1980.

---

H. Bixler, Whiting, Whiting and Rosie, Fairbanks, for appellant.

Edward T. Noonan, Fairbanks, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

BURKE, Justice.

The basic issue raised by this appeal is whether the plaintiff below, Earthmovers of Fairbanks, Inc., was entitled to a 22% profit and overhead markup from Pacific Insurance Company, on parts which Earthmovers, Inc., had purchased to repair a damaged crane. The appeal was brought by Earthmovers, Inc., after entry of a judgment in favor of Pacific.

The crane was insured against damage by Pacific, under an insurance policy issued to H & S Earthmovers, a joint venture.[1] The joint venture and Earthmovers, Inc., are separate entities. After the crane was damaged by a truck belonging to Badger Construction Co., it was repaired by Earthmovers, Inc. Pacific paid $90,794.49 to the joint venture for the repair of the crane, but refused to pay the $5,000 deductible under its policy and the 22% profit and overhead markup demanded by Earthmovers, Inc.

Earthmovers, Inc., thereupon filed suit in the superior court, contending that it was acting separately from the joint venture in repairing the crane, and that it was entitled to recover under a repair contract, express or implied-in-fact, with Pacific. The superior court found that there was no such contract and entered judgment in favor of Pacific.

After the superior court announced its decision, Earthmovers, Inc., filed a motion requesting that the court reconsider its judgment or, in the alternative, that the court permit it to amend its complaint to substitute the joint venture, H & S Earthmovers, as party plaintiff. The court granted the motion for reconsideration, re-affirmed its original decision, and denied the motion to amend. This appeal followed.

■ Earthmovers, Inc., first contends that the court erred in finding that there was no contract between the parties. This contention, we believe, is without merit. The existence or non-existence of a contract is a question of fact, and a trial court's finding on that issue will not be set aside by this court unless clearly erroneous. *Jackson v. White*, 556 P.2d 530, 532 (Alaska 1976); *B.B. & S. Construction Co. v. Stone*, 535 P.2d 271, 273–74 (Alaska 1975). Rule 52(a), Alaska R.Civ.P.[2] The record in this case fails to convince us that the trial court's finding, that there was no contract, was clearly erroneous, or that in reaching its decision there was an erroneous application of law.

Next, Earthmovers, Inc., contends that "the doctrines of equity could have and should have been utilized by the trial court to resolve [the case] rather than strict adherence to the common law principles of contract." Although not clearly stated in its brief, its argument is apparently that Earthmovers, Inc., was entitled to recover on a theory of unjust enrichment or quasi-contract.

In *B.B. & S. Construction Co. v. Stone*, we stated:

> unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

---

1. The joint venture consists of Earthmovers, Inc., and H & S Warehouse.

2. Rule 52(a), Alaska R.Civ.P. provides in part, that "[f]indings of fact shall not be set aside

Contractual and quasi-contractual relief are mutually exclusive remedies. A quasi-contractual obligation is one that is created by the law for reasons of justice, without any expression of assent by the parties. A contractual obligation is created by expressions of assent.

535 P.2d at 275 n.8 (citations omitted). In *Martens v. Metzgar*, 524 P.2d 666 (Alaska 1974), we cited with approval the following description of the essential elements of quasi-contract:

[B]enefit conferred upon the defendant by the plaintiff, appreciation by the defendant of the benefit and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof.

*Id.* at 674, *quoting Home Savings Bank v. General Finance Corp.*, 10 Wis.2d 417, 103 N.W.2d 117, 121 (1960).

In the case at bar, Pacific was unjustly enriched only if it was obligated under its policy to repair the crane.[3] That question, however, was not litigated; Pacific's liability under the policy was never an issue in the trial of the case.[4] Well prior to trial, in a memorandum filed in support of its motion for summary judgment, Earthmovers, Inc.'s, attorney stated:

[T]his is not a case involving an insured and an insurance company . . . . The provisions of the insurance policy have no effect whatever on the dispute between Earthmovers and Pacific Insurance in his litigation, except where the insurance company is relieved from obligation for paying portions of the repair.

That continued to be his stated position until after the trial ended. The first indication that his position might be otherwise was when he filed his post-trial motion to amend the complaint. Under these circumstances, we think it would have been improper to allow Earthmovers, Inc., to recover on a theory of quasi-contract, since Pa-

cific's obligation to repair the crane, under the terms of its policy, was never established.

Earthmovers, Inc., did, of course, by its motion to amend, attempt to convert the claim to one under the policy, by substituting the joint venture as party plaintiff. That motion, however, was denied. Our dissenting colleague would have us hold that such action amounted to an abuse of the court's discretion.

■ The effect of the amendment would have been to change the entire nature of the case. The suit that had begun, and was tried, as one by Earthmovers, Inc., for payment under its alleged repair contract, would have become an action by H & S Earthmovers, a separate legal entity, to collect under the terms of the insurance policy issued to it by Pacific. Given the significant differences involved in the two causes of action, and counsel's repeated assertions that the insurance policy was not involved, we are unable to say that in refusing to allow the amendment the court abused its discretion. *See Merrill v. Faltin*, 430 P.2d 913, 915 (Alaska 1967).

Finally, Earthmovers, Inc., contends that it was entitled to recover the amounts claimed under this court's decision in *Curt's Trucking Co. v. City of Anchorage*, 578 P.2d 975 (Alaska 1978), citing that case "along with the evidence and finding by the trial court on the subject of the profit and overhead markup, [as] conclusive of that issue in this case." In *Curt's* we held that "a party which repairs property tortiously damaged by another should be permitted to recover indirect expenses incurred in making such repairs if its calculation of overhead is shown to be a fair and reasonable measure of actual costs." *Id.* at 979.

■ The superior court found that a 22% profit and overhead markup, except on certain items, was reasonable. The court fur-

---

3. In its answer to the complaint, Pacific, in the mistaken belief that it was being sued by its insured, the joint venture, set forth certain affirmative defenses which it alleged would bar a recovery under the policy.

4. The superior court's Conclusions of Law stated in part: "The issues of recovery under the insurance policy are not before the court."

ther found, however, that the repairs had been performed by the joint venture, an entity separate from Earthmovers, Inc., and concluded that Earthmovers, Inc., was, therefore, not entitled to recover.[5] Again, we are unable to say that this finding was clearly erroneous or that in reaching its decision the court erroneously applied the law.

Having concluded that there are no other grounds justifying a reversal, the judgment of the superior court is AFFIRMED.

BOOCHEVER, Justice, dissenting, with whom RABINOWITZ, Chief Justice, joins.

Pacific Insurance Company insured a crane being used by H & S Earthmovers, a joint venturer. The crane was extensively damaged under circumstances coming under the coverage of the insurance policy. Pacific thus had the obligation to pay the reasonable cost of repairs to the crane, less the $5,000.00 deductible specified in the policy. There can be no dispute that repair costs include a reasonable sum for indirect expenses.[1] The trial court found that, with minor exceptions, the twenty-two per cent profit and overhead charges were reasonable. The insurance company, however, seeks to avoid paying the amount required under its contract of insurance by relying on the technicality that Earthmovers of Fairbanks, Inc., performed the repairs as a separate entity, rather than on behalf of the joint venture in which it was a participant. The court found that James Thurman, president of Earthmovers of Fairbanks, Inc. (hereinafter Earthmovers), was also authorized to act on behalf of the joint venture.

It is clear that there was an oral contract for repair. The only question is whether the contract was between Pacific and the joint venture[2] or Pacific and Earthmovers. The majority finds no error in the trial court's finding that the contract was not between Pacific and Earthmovers.

In my opinion, the record shows that the contract was between Pacific and Earthmovers. The insurance company was aware of the repairs and its agents came to Earthmovers' office, where the repairs were made, to check on the crane. Earthmovers' office was located four and one-half miles from the joint venture's office. All correspondence was on Earthmovers' letterhead stationery. Telephone calls from Pacific were answered at Earthmovers' office. No complaint was made about the repairs, and, in fact, the bill submitted by Earthmovers was paid by Pacific except for the disputed items. I would hold that the court's finding that the contract was not between Earthmovers and Pacific is clearly erroneous.

I also believe, however, that it is immaterial whether the contract was with Earthmovers or with the joint venture. Assuming, as the trial court found, that Pacific believed it was dealing with the joint venture, Pacific would still be liable for the repairs. The only real argument was whether the insured, repairing damaged property, is entitled to a reasonable sum for profit and overhead. The realities of the situation were that the crane had to be repaired. Unless the insurance company objects to the insured performing the repairs, I see no reason why the insured should not be reimbursed in the same manner as anyone else

5. Based upon the facts that it found, the court stated the following in its Conclusions of Law:
    4. Plaintiff's employees were acting in dealings with the defendant as agents of the joint venture—the insured. All repairs were made by the joint venture.
    5. Defendant believed it was dealing at all times pertinent hereto with [the joint venture], not the plaintiff.

    .    .    .    .    .    .

    7. Plaintiff is estopped from claiming its agents were acting separately from the joint venture, because the dealings were within the

scope of the joint venture, were commenced in the name of the joint venture, and plaintiff gave no notice to the defendant of any intention to act outside the joint venture in these dealings.

1. See Curt's Trucking Co. v. City of Anchorage, 578 P.2d 975, 979 (Alaska 1978).

2. Pacific acknowledged that "the contracts regarding the damaged crane was between an insured and its insurer."

making the repairs.[3] Here, Pacific was well aware that the repairs were being performed and that Thurman was in charge. Whether it thought that the joint venture, its insured, or one of the joint venturers was completing the repairs could make absolutely no difference.

After the trial court found that Pacific believed it was dealing with the joint venture, a motion to amend the complaint to conform to the proof, substituting the joint venture as the plaintiff, was filed. Pacific contended, however, that it would have defenses under the policy. The alleged defenses appear to me to be patently frivolous. Pacific raised two affirmative defenses in its answer to the complaint, made when it allegedly believed that the joint venture was suing as the insured. The first affirmative defense states:

> Plaintiff has failed to file suit under this insurance contract within one year of the occurrance [sic] as is required by General Condition 11 of the policy and is therefore precluded from recovery by waiver and/or estoppel.

Pacific's defense is predicated upon the assumption that the date of the occurrence which gave rise to the claim was the date of the accident. In *Fireman's Fund Insurance Company v. Sand Lake Lounge, Inc.*, 514 P.2d 223, 227 (Alaska 1973), we interpreted a similar contractual limitation, requiring the suit to be filed within twelve months after "the inception of the loss," to mean that the suit must be filed within twelve months after "the date on which the insurance company denies coverage." I would apply the same interpretation to this policy which requires a suit to be filed within twelve months after "the occurrence which gives rise to the claim."[4] Accordingly, the suit, filed four months after Pacific's denial, was timely.

The second affirmative defense states:

> Plaintiff has never sought to invoke the appraisal-settlement system provided for under paragraph 12 of the subject insurance policy and is therefore precluded from recovery by estoppel and/or waiver.

There was no dispute as to values, but a legal issue as to the right to recover for overhead and profit. Under these circumstances the appraisal provision may not be evoked.[5]

Moreover, either Pacific believed it was dealing with Earthmovers, rather than the joint venture, in which case a contract was entered into with Earthmovers, or it believed it was contracting with the joint venture. In the latter event, it never raised any policy defenses until long after the repairs were made and it had partially paid the bill. It never contended that an appraisal was required or suggested any settlement procedures. Consequently, an appraisal was not a condition precedent to recovery under the provisions of paragraph

---

**3.** In *Curt's Trucking Co. v. City of Anchorage*, 578 P.2d 975, 979 (Alaska 1978), we held that a party making its own repairs may recover overhead expenses. Although the case did not specifically concern the recovery of profit, I believe its rationale can be extended to allow such a plaintiff to recover profits since any other repairer would include profits in its bill. *See Bultema Dock & Dredge Co. v. Steamship David P. Thompson*, 252 F.Supp. 881, 885–86 (W.D.Mich.1966). *But see Crain Bros., Inc. v. Duquesne Slag Products Co.*, 273 F.2d 948, 952–53 (3d Cir. 1959); *Sewell v. Newton*, 152 So. 389, 393 (La.App.1934). In any event, the joint venture is clearly entitled to recover its overhead expenses.

**4.** Paragraph 11 of the policy provides:

> *Suit.* No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim, provided however, that if by the laws of the State within which this policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State.

**5.** "[A]n appraisal provision provides a method for establishing the dollar value of damage sustained." *Keesling v. Western Fire Ins. Co.*, 10 Wash.App. 841, 520 P.2d 622, 625 (1974). However, "[t]here is no case for arbitration where the insurer disputes its liability, but does not dispute the amount of the losses." Couch, *supra* note 4, § 50:58 at 380; *Charles Taylor Marine, Inc. v. State Farm Fire & Cas. Co.*, 234 So.2d 400, 402 (Fla.App.1970).

12 of the policy.[6]  *See Norwich Union Fire Insurance Society v. Rayor,* 70 Colo. 290, 201 P. 50, 51 (1921); *Phoenix Indemnity Co. v. Zinn,* 177 Kan. 689, 281 P.2d 1065, 1069 (1955); *School District No. 1 v. Globe & Republic Insurance Co.,* 146 Mont. 208, 404 P.2d 889, 892 (Mont.1965); Couch, *supra* note 4, § 50:67 at 385.  Even if it were a condition precedent, the right was waived. *See Home Indemnity Co. v. Bush,* 20 Ariz. App. 355, 513 P.2d 145 (1973); *Hanby v. Maryland Casualty Co.,* 265 A.2d 28 (Del. 1970); *Davis v. Imperial Insurance Co.,* 16 Wash. 241, 47 P. 439 (1896); Couch, *supra* note 4, §§ 50:83–86, at 393–94.

Leave to amend should be liberally granted, especially where justice so requires. *Estate of Thompson v. Mercedes-Benz, Inc.,* 514 P.2d 1269, 1271 (Alaska 1973); Alaska R.Civ.P. 15(a) and (b).  Under these circumstances, I believe that the trial court abused its discretion in failing to grant the motion to amend.

What we have here is a relatively common situation in Alaska, where the niceties are not always observed when the president of one joint venturer who is authorized to act for the joint venture does not indicate specifically which entity he is representing. Here, in my opinion, it made no difference to the insurance company whether the joint venture or one of the joint venturers made the repairs.  There is no dispute between Earthmovers and the joint venture, as indicated by the effort to amend the complaint to show the joint venture as plaintiff.  I see no reason why the insurance company should profit at the expense of Earthmovers by not paying its just obligation under the policy.  Under the theory advanced by the majority, the insurance company could just as well be absolved from paying any of the $110,000 repair costs by contending that the wrong entity had made the repairs.  I cannot subscribe to such a result.

**6.** Provision 12 provides in part:

> *Appraisal.*  If the Insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made

within sixty (60) days after receipt of proof of loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place.