Central Illinois Light Company, an Illinois Corporation, Plaintiff-Appellant, v. J. Albert Stenzel, Defendant-Appellee.

Gen. No. 10,494.

Third District.
December 16, 1963.
Rehearing denied January 21, 1964.

Miles Gray, of Springfield, and O'Hern, Alloy, O'Hern & Wombacher, all of Peoria, for appellant.

Stuart Dobbs, Gillespie, Burke & Gillespie, all of Springfield, for appellee.

REYNOLDS, J.

This is a suit for damages in the amount of $360.34. The jury on a directed verdict returned a verdict for the plaintiff of $245.71. Plaintiff appeals.

Defendant Stenzel was 19 years of age and lived with his parents at Osco, Illinois. He was on his way to Springfield, driving a truck borrowed from a neighbor. He had started from home with a load of cattle and when the truck developed clutch trouble, he came into Springfield, borrowed the truck from a neighbor, went back to Havana, loaded the cattle into the borrowed truck and was on his way back to Springfield

when he apparently went to sleep and the truck ran off the road, collided with the pole of the plaintiff light company, breaking the pole and damaging the wire system. The accident occurred December 31, 1961 in the early hours of the morning. The broken pole was replaced and temporary repairs made on the morning of December 31, 1961, which was a Sunday. A snow storm came up and the repairs were not completed until January 2, 1962. The trial court granted a motion for summary judgment against the defendant on the issue of liability and the issue of the plaintiff's damages was left for determination on the trial of that issue.

The plaintiff claimed damages as follows:

| | | | |
|---|---|---|---|
| Materials | 85.39 | | |
| Less Salvage | 1.20 | 84.19 | |
| Plus store's expense at 8.26% | 7.05 | . 91.24 | |
| Total material cost | | | 91.24 |
| Labor | | | |
| 12 hours at regular rates | 38.10 | | |
| 21 hours at double time rates | 139.13 | 177.23 | |
| Fringe benefits 23.2% | | 41.12 | |
| Supervision 10.4% | | 18.43 | |
| Total labor costs | | | 236.78 |
| General Overheads 6.5% | 21.32 | | |
| Truck expenses 11 hr. at $1.00 per hr. | 11.00 | | 32.32 |
| Total ...................... | | | $360.34 |

In addition to the labor costs and the material costs the plaintiff claimed store expenses of $7.05, fringe benefits of $41.12 for the labor, supervision costs of

$18.43, general overhead expense of $21.32 and truck expenses of $11, as shown by Plaintiff's Exhibit No. 14. The pole broken was one of about 200 to 250 poles making up one of the transmission lines of the plaintiff. The pole broken had about 15 years useful life and the assistant superintendent of construction for the Springfield Division of the plaintiff company testified such a pole had an average useful life of 33 years. The life of the other materials used in the repairs was not established. Some of the materials were retained and used in the repairs. When the repairs were finished the distribution line was restored to substantially the same condition it was before the damage occurred. The pole substituted was a 40-foot pole while the one broken was a 35-foot pole.

The assistant comptroller of the plaintiff testified how he computed the charges for store account, fringe benefits, supervision, general overheads, and truck expense. The store expense was computed by dividing the amount of stores issued into the cost of handling and this amounted to a percentage of 8.26. The fringe benefits were computed by taking the total payroll and dividing it into the costs of these fringe benefits, which were for holidays, time when the employees were ill, pay for time not worked, pensions, and insurance, and this amounted to a percentage of 23.2. Supervision expenses included clerks in offices, and pay of people below the administrative level and above the foreman level, such as the superintendent of construction, superintendent of operation, department line superintendents at Springfield and Peoria, assistant line supervisors, a clerk at Springfield, operations supervisors at Pekin and Lacon and others. The computation was made by dividing the supervisory expense by the total pay of line crews which amounted to a percentage of 10.4. General overhead expenses are the costs of the general office people of the com-

pany, such as the general accounting department, the payroll department, administrative officers and employees and other full time employees of the company. The expense of rent for a nine story office building in Peoria was in the general overhead class. The computation on this item was by dividing the total cost of labor and materials into the administrative and general overheads class, which amounted to a percentage of 6.5. The truck expense was based on a determination that operation of the truck cost the company approximately $1 per hour.

The defendant objected to the evidence as to the items for store expense, fringe benefits, supervision expenses, and general overheads, as not directly attributable to the negligence of the defendant. The plaintiff submitted a motion for directed verdict for the sum of $360.34, which included all the items shown in its Exhibit No. 14. Defendant submitted motion for directed verdict against the defendant for the sum of $122.58, being the proportionate part of the plaintiff's labor and materials costs based on the life of the pole, before it was broken, approximately 45%. The court denied the plaintiff's motion for a directed verdict and allowed the defendant's motion for a directed verdict in part as follows: (1) 45% of the cost of materials and store's expenses; (2) 45% of 33 hours of labor at regular rates; 100% of one-half of 21 hours at double time rates; (3) 45% of fringe benefits and supervision; (4) 45% of general overhead expenses; (5) 45% of truck expenses. Apparently, the trial court computed the charges on a 45% basis across-the-board as to everything claimed by the plaintiff except the double time labor rates. According to the computation of the court this amounted to $245.71 which the court directed the jury to find for the plaintiff and against the defendant.

■ Two questions are presented on this appeal. One, was the summary judgment for the plaintiff and against the defendant on the question of liability proper under the evidence. There is no question that whatever happened, it happened as the result of some action on the part of the defendant. He was driving the truck and no other person or other vehicle was involved. The weather was clear and the pavement was dry. So far as was known there was nothing mechanically wrong with the truck. The only explanation for the happening by the defendant was either that he may have gone to sleep, or that he had been banged up a little in reloading the bulls into the truck, one of them worked him over a little and he was a little stiff and sore and may have been excited.

While the defendant is a minor, admissions showing negligence may be used against him, whether in a pretrial deposition or in the trial. Ferrell v. Chicago Transit Authority, 33 Ill App2d 321, 179 NE2d 410; Reed v. Kabureck, 229 Ill App 36; Tennes v. Tennes, 320 Ill App 19, 50 NE2d 132. When a party testifies clearly and unequivocally to a fact which is peculiarly within his own knowledge such testimony may be considered as a judicial admission. Tennes v. Tennes, 320 Ill App 19, 33, 50 NE2d 132. The language in the Tennes case is particularly apt in this case. The court in that case said: "When a car proceeding along a street suddenly swerves into a pole with no apparent cause, and there is no attempt to explain the occurrence, no claim that any other car or person was involved or that there was a hidden defect in the car, but simply a situation where the driver, whether asleep or awake, steered into a pole, it cannot be said that reasonable minds could differ on the question of negligence."

Here there was no conflict in the evidence. Where there is no conflict a question of law is presented as to whether on the facts a verdict should be directed. Biggerstaff v. Estate of Nevin, 2 Ill App2d 462, 119 NE2d 826. When facts are undisputed and but one reasonable inference can be drawn from them, it then becomes a question of law. Thien v. City of Belleville, 331 Ill App 337, 73 NE2d 452; Downs v. Baltimore & O. R. Co., 345 Ill App 118, 102 NE2d 537. In this case, the only inference that could possibly be drawn from the evidence was that the defendant was guilty of negligence. The summary judgment on the question of negligence was proper.

■■ On the question of the damages sustained by the plaintiff in this case, the questions posed by this appeal range into an untried and uncharted field of law. It has been a general and unquestioned rule that the injured party must be made whole again. Damage to personal property was measured, where the property could be repaired, to the necessary cost of making the repairs and value of the use of the property while it is undergoing repairs. Traut v. Horace L. Winslow Co., 201 Ill App 83; McNamara v. Melson, 237 Ill App 279; Hardware Mut. Cas. Co. v. Baldus, 316 Ill App 283, 44 NE2d 947; Santiemmo v. Days Transfer, Inc., 9 Ill App2d 487, 133 NE2d 539. Where property had been damaged and can be repaired, true measure of damages is reasonable cost of repairs, providing that such is less than value of property before damage. Conley Co. v. Langhaus, 13 Ill App2d 574, 142 NE2d 799.

■■ A plaintiff is entitled to recover all damages naturally following the commission of a tort. Maton Bros., Inc. v. Central Illinois Public Service Co., 269 Ill App 99; Clark v. Public Service Co., 278 Ill App 426. Damages must be the proximate result of the wrong. Johnston v. City of Galva, 316 Ill 598,

147 NE 453. Damages recoverable in an action of trespass on the case must be the natural result of the act complained of, and must be real, and not speculative or probable. Chapman v. Kirby, 49 Ill 211. Damages sought to be recovered in an action should always be the natural and proximate consequence of the wrongful act complained of. Johnson v. Drummond, 16 Ill App 641. The only damages that can be recovered in an action for negligence are such as are the natural and reasonably to be expected result of the defendant's act. Rosan v. Big Muddy Coal & Iron Co., 128 Ill App 128. In the case of torts, the only damages that can be recovered are such as are "proximate damages." . . . . ILP Damages Vol 15.

These cases state the general rule of law as to damages recoverable for injury to personal property. In the main they deal with objects or chattels which may be repaired such as automobiles. They do not reach the legal questions arising in this case. Most of the cases were decided long before we had withholding taxes, fringe benefits, double time labor rates and other matters that are in question here. Here the plaintiff is a public utility and the damage is to one of the electric power transmission lines of the plaintiff. The plaintiff contends that in addition to the labor and material cost of the repairs, the defendant should be liable for store expense, fringe benefits, supervision costs, general overheads and truck expenses. And the plaintiff cites as authority for this claim, the case of Baltimore & O. R. Co. v. Commercial Transport, Inc., 273 F Rep2d 447, originating in the Eastern District of Illinois. In that case a tractor-trailer operated by the defendant collided with a diesel locomotive of the railroad at a crossing. In that case the plaintiff claimed overhead expenses including supervision; depreciation on buildings, machinery, equipment and tools; indirect expenses for insurance,

freight charges, record keeping and stenographic services; a proportionate share of cost of employees' paid vacations and holidays; and taxes and contributions for unemployment compensation, railroad retirement and health and welfare benefits. The formulae for these charges was the current Rules of the General Managers Association, an association of twenty-five major railroads formed to establish reasonable charges and uniform cost factors to be employed by these railroads in billing each other, either for services rendered in the repair of the railroad track, equipment or property of another railroad, or for reimbursement for self-repair of damages to track or equipment caused by another railroad. These rules had been in use since 1913. And the court in that case held that the reasonable cost of repairs made by plaintiff by its own employees is not limited to the dollar amount actually paid the workman and material supplies, saying "Such a limitation would ignore the facts of business life."

This court does not agree with the conclusion in the Baltimore & Ohio R. Co., case, for the reason that we believe that the conclusion reached in that case ignored the facts of our basic law, namely, that the damages recoverable must be the proximate result of the wrong. They must be proximate and cannot be remote or speculative. It is stretching out of all recognition the casual connection between a farm boy in a moment of sleepiness running into and damaging the electric transmission line pole of the plaintiff, and the plaintiff claiming as resulting damages a percentage of the rent of a nine story building in Peoria. There is no connection between the breaking of the pole by the defendant, and salaries of the clerks in offices, the superintendents of construction, operation and line supervisors, not only in the Springfield division, but also in the Pekin and Lacon divisions of the

plaintiff. The salaries or a proportionate share of the salaries of these clerks, supervisors and superintendents did not flow as a consequence of the negligence of the defendant. These salaries and expenses would have been paid if the defendant had not broken the pole. These are the operating expenses of the plaintiff. They would be proper in making up a rate schedule. The absurdity of charging a proportion of these expenses to this defendant is best illustrated by the statement of Robert Ashley, Assistant Comptroller of the plaintiff, when he testified as to the store expense that it wouldn't matter whether one pole or forty poles were knocked down, the store expense percentage would be the same and that the computation he made did not depend on the size of the item taken out of the inventory. And his statement that the administrative and general office expense claimed would have been incurred whether the defendant had hit the utility pole or not. The annual salary of the president and other officers of the plaintiff, the fixed income employees and like expenses are remote matters from the accident that occurred on December 31, 1961, and this court cannot justify these expenses as flowing from or the natural consequence of the act of the defendant. The supervision costs, unless directly connected with the repair of the pole and line, the store expenses, and the general overhead, are such expenses that would have been incurred and paid, without regard to the breaking of the pole. They constitute part of the operating expenses of the plaintiff and this court can see no relation of these costs to the negligence of the defendant. In so holding, this court is cognizant of the complex costs of operation of a business such as that of the plaintiff, but at the same time, this court cannot see any thread of continuity, any relation, whatsoever, between the cost of operation of the plaintiff, and the damages occasioned by the

defendant breaking the pole of the plaintiff. We think the rule of damages which requires that the damages must be those that flow as the natural consequence of the negligence of the defendant must not be ignored. In doing so we are not ignoring the facts of business life, but following the law of damages. To hold otherwise would be to shift some of the costs of operation of the light company from the people who use electricity to those who are guilty of some damage to the property of the company. If this is permitted, it seems logical that any debtor of the light company, upon being sued for the debt, would be liable for overhead, supervision and other items, in addition to the amount of the debt.

This is a new matter in Illinois. This court can find no guide lines that are sufficiently definite to be relied upon. We do not regard the Baltimore & Ohio Railroad Company case as binding on this court or decisive of the questions involved here, because the court in that case relied upon a set of rules and formulae in use by railroads for almost fifty years. No such rules or formulae obtain here. The computation by the assistant comptroller of the plaintiff company was not contradicted by testimony on the part of the defendant for the obvious reason that such information was not available to the defendant. The fact that the defendant offered no evidence as to the reasonableness of the charges is immaterial. The important question at all times here has been, are these overhead costs, supervision expenses and store expenses part of the damages sustained by the plaintiff? We think not. They are fixed and continuing expenses of operation that are in no way dependent upon and bear no relation to the negligent act of the defendant and in no way flow as a natural or proximate result of his negligence.

This court can see no merit in the across-the-board application of a percentage of the various expenses and costs. Because the pole broken had a life expectancy remaining of 45% is definitely a matter to be considered in reaching the amount of damages. But it has no relation to the general overhead, the supervision or the operation of the supply store of the plaintiff. Computation based on the life expectancy of the pole and the other materials should be confined to the materials damaged and the costs of the replacement items. There is no connection between the life expectancy of a damaged pole and the salary of a vice president, or the rental paid for a building in Peoria, or the salaries of division superintendents in other divisions of the company.

The damages of the plaintiff should be computed on the following basis: (1) 45% of the materials used in repair of the broken pole and transmission line; (2) 100% of all labor costs, both at regular time and double time rates; (3) Fringe benefits on the basis of 23.2% of the labor costs of the repair crew used in this repair; (4) Truck expense at the rate of $1.00 per hour for the hours for which the truck was used in connection with the repair of the pole and line broken by the defendant.

The truck was necessary and it has been established that the cost of operating the truck was $1 per hour. The fringe benefits are part of the labor costs. While they do not appear in the regular or double time labor costs, actually they are a part of the salaries or wages paid these workmen, just as much as the regular salary rates. The store expense, the supervision, and the general overhead expense should be disallowed as too remote or not attributable to the negligence of the defendant.

This cause will be reversed and remanded to the trial court with instructions to enter a judgment in accordance with this opinion.

Reversed and remanded with instructions.

CARROLL, P. J. and ROETH, J., concur.