David F. Lee, Jr., J.
The plaintiff, New York State Electric & Gas Corporation, in this negligence action, seeks damages in the sum of $311.02 for replacing a wooden utility pole and the wires. By stipulation, a trial was held before the court without a jury.
. The action arises as result of an automobile accident which occurred at about 1 o’clock on the morning of September 6, 1961, in the Village of Windham, Greene County, when the auto *787 mobile owned by the defendant left the highway and struck the utility pole. The pole, “ jointly owned ” or “ used jointly ” by plaintiff and New York Telephone Company, was broken and had to be removed and replaced.
The defendant’s liability was stipulated, and it was also stipulated that “ in the accident on that date a utility pole was damaged.” The issue of damages and their proper measure is the sole issue for determination here.
The damages claimed by plaintiff upon which testimony was heard, and which are alleged in plaintiff’s bill of particulars are:
Cost of pole.............................$ 41.44
Wages paid to employees................ 199.40
Stores expense.......................... 4.56
Overhead expense (material)............. 4.14
Fringe benefits, payroll, taxes
and insurance (labor).................. 56.79
Overhead expense (labor)................ 19.94
Transportation cost..................... 33.75
The sum of these items claimed as damages is $360.02, however deducted from this is $49 which was charged to New York Telephone Company pursuant to an agreement, dealing with jointly owned poles, negotiated between that company and the plaintiff. The agreement is renegotiated annually, and if the New York Telephone Company replaces a jointly owned pole a like amount would be charged to New York State Electric & Gas Corporation. The total cost of a pole as reflected by the agreement then in effect is $98, and includes “ the bare cost of the pole, the Stores Expense involved with the pole, and the actual cost of setting the pole.” The $98 figure is an average cost rather than the cost of a particular installation.
The plaintiff’s bill of particulars alleges “ necessary changes in the wires and appurtenances ’ ’, however, there was no evidence presented with specific reference to this item.
It was stipulated that “ since the damage incurred by the plaintiff was to a pole which had been installed for less than one year the question of depreciation is not an issue in this case.”
The manager of plant accounting, the only witness, testified that the cost of replacing the pole as reflected by the company records was $311.02. It is the use of certain components in computing this total which is disputed by the defendant. A summary of the testimony as to the breakdown and description of each component follows: The pole itself was the only “ material expense ” and cost $41.44. The labor cost to remove and *788 replace the damaged pole was $199.40 and spans work performed the night of September 6, 1961 when the men were called out from their homes to perform temporary repairs until September 27, 1961. A transportation charge of $33.75, computed at the rate of $2.50 per hour, for the light line-trucks used in this operation was made. The rate has no relation to the cost of the specific vehicle or vehicles used on those days on which labor was performed, but represents the average per hour cost of operating the group of light line-trucks as experienced by the Electric •& Gas Corporation for the previous 12 months.
A portion ($4.56) of the total damage claim was allocated to “ Stores Expense ” and was determined by taking 11% of the cost of the pole. It generally represents the cost of maintaining storehouses and storage areas throughout the entire Electric & Gas Corporation system and includes such items as the salaries of the storekeepers, certain incoming freight items not directly associated with specific items of material, heat and light, office supplies, the cost of the Central Purchasing Department including wages, the wages of central office stores accounting employees, and maintenance of office and stores equipment such as lift trucks within the storeroom and scales.
An additional charge is “ overheads attributable to material ” amounting to $4.14 or 10% of the bare pole cost. Its specific components are “supervision and engineering” 8% (percentage of bare pole cost), “ clerical and accounting cost ” of .8%, and the “use of small tools” .6%. These totaled 9.4% and are rounded to 10%. These, too, are “ suspense accounts ’’which are kept by the Electric & Gas Corporation so that the percentages charged reflect the experience of the plaintiff corporation. “ The greatest expense contained in overhead was supervision, engineering and clerical accounting costs of the engineering and supervision staffs in construction and maintenance work of the company.”
The plaintiff’s witness testified that as an item of damages $56.79 is claimed for “ fringe benefits, taxes and insurance.” This figure is determined by taking 28.48% of the labor charge which in the instant case was $199.40. The percentage used in this computation is determined by aggregating other percentages: “ Workmen’s 'Compensation Insurance of .247%, public liability insurance of .798%, State Unemployment Insurance of 1.3%, Federal Unemployment, .3%, Federal old-age benefits of 3%, retirement annuity cost of 11.925%, and compensated lost time of 10.91%.” The percentage reflects the value of fringe benefits per dollar of labor expended in the line department, utility maintenance and construction department and for *789 the clerical employees related to those departments based on the experience of the plaintiff corporation in its entire system, not as to these particular employees or this particular job.
Another overhead figure based on the labor charge was $19.94 which is 10% of the labor charge. The percentage used is computed in exactly the same manner as the overhead for materials, 8% for supervision and engineering, .6% for the use of small tools, .8% for clerical and accounting costs. The total of 9.4% has been rounded to 10%, as with the materials overhead. The components of this percentage are the labor cost of the transmission and distribution departments but also ‘1 the cost of maintaining [the] two-way radio system, the clerical cost of accounting for the time distribution of employees, the small tools which are on [the] line trucks which are consumed during the progress of any construction job, the expenses of employees which cannot be directly attributable to a particular job
The manager of plant accounting further testified that these charges comprising the damages claimed reflect accounting procedures authorized for public utilities by the Public Service Commission of New York and the Federal Power Commission. Upon such accounting items rates are determined and submitted to the Public Service Commission for approval.
“ In actions in tort, there are certain well-settled and universally recognized rules relating to damages recoverable * * *. The person responsible for the injury must respond for all damages resulting directly from and as a natural consequence of the wrongful act according to common experience and in the usual course of events * * *. The damages cannot be remote, contingent or speculative. * * * The damages must be compensatory only. Reasonable certainty as to the amount is all that is required (Curtis v. Rochester & Syracuse R. R. Co., 18 N. Y. 534).” (Steitz v. Gifford, 280 N. Y. 15, 20.)
“ The rule seems to be settled in the State that as to damages to utility property, the basis for a recovery consists of the actual cost of emergency expenses together with the present-day cost of replacing the damaged or destroyed equipment, less accrued depreciation, and any allowance for salvage.” (New York State Elec. & Gas Corp. v. Fischer, 24 A D 2d 683.)
The proper measure of damages is the cost of replacing, the reproduction of, the pole. Mr. Justice Beibk succinctly pointed out in New York State Elec. & Gas Corp. v. Fischer (43 Misc 2d 178, 180, 181, affd. 24 A D 2d 683): “ The fact that the plaintiff herein is a public utility and subject to the jurisdiction of the Pub.ic Service Commission should not affect this rule of *790 damages. A - tort-feasor should not be penalized because of the public character of the corporation which seeks to recover.” The court also pointed out that, “ The tort-feasor is liable for the value of the asset at the time of the damage. Any change in this liability resulting from bookkeeping methods is unwarranted.”
The defendant urges that, “ The. plaintiff in this case seeks to recover a verdict based solely upon testimony of an accountant Avho testified to the accounting practices of his employer. There Avas no testimony that any of the charges, surcharges, or so-called fringe benefits are reasonable, nor that these book entries were related to the specific damage sustained by the plaintiff. This evidence falls far short of the requirements of our jurisprudence to prove damage ” (citing Parilli v. Brooklyn City R. R., 236 App. Div. 577; Breiter & Co. v. Ward La France Trucking Co., 19 Misc 2d 958, and other cases).
There was no testimony directly concerning the reasonableness of the items of alleged damage. IIoAvever, plaintiff’s manager of plant accounting testified as to the plaintiff’s cost of labor and materials in making the necessary repairs or replacement of the pole, and as to the plaintiff’s indirect costs of making the repairs. Plaintiff in determining the indirect cost of repairs used percentages of the direct costs of labor and materials, which percentages were based upon the actual experience of the plaintiff. The plaintiff, of course, may not recover damages which are conjectural, and a matter of guess work, but if the costs of repair, including the indirect costs, are proven with reasonable certainty and it is proven that these costs have been made in accordance Avitk sound accounting principles, then these costs are proper elements of damage, which the plaintiff may recover. There is no evidence that the percentage of items used in plaintiff’s accounting system were inaccurate or unrealistic. The Court of Appeals in Jones v. Morgan (90 N. Y. 4, 10), stated: “if the property is of such a character as to have no market value, then other proof tending to show the value at the proper time and place must of necessity be resorted to.”
The court concludes that, although there Avas no testimony that either the direct costs or the indirect costs were reasonable in amount, the items of damage have been sufficiently and adequately established by the testimony offered to justify granting judgment for more than mere nominal damages.
The payment by New York Telephone Company was made pursuant to “ a working schedule Avhich approximates average costs,” and in accordance with a “ Reciprocal Pole Price Sched *791 ule.” The defendant in his memorandum, with reference to the agreement between the plaintiff and New York Telephone Company, asserts “ It would seem only just that this utility be bound by the real expense for the replacement of this utility pole, or that it use the figure agreed upon between it and the New York Telephone Company as reflecting the actual, though average, cost throughout its system. There should not be two scales to measure the damage, one for another utility and a second to be applied to a citizen of this state. ’ ’
The court concludes that the payment in the sum of $49, or one half of $98 as provided in the agreement, to plaintiff does not establish the actual damage to plaintiff or its cost to replace the pole.
Upon the testimony, including that as to the accounting procedure and the experience of the corporate plaintiff, the court concludes that the reproduction cost of the pole was $305.02.
The cost of the new pole in the sum of $41.44; and wages to employees for labor on the night of the accident in the sum of $27.04, on September 21, 1961 in the sum of $20.84, on September 22 in the sum of $31.26 and on September 27 in the sum of $120.26, totaling $199.40, should be considered proper charges as items of damage.
The pole in question was stored by the plaintiff in an open lot after it was shipped to plaintiff by the supplier. Stores expense includes a percentage of the cost of maintaining the company storerooms on a State-wide basis, heat, light, and communication service for the storerooms, losses due to breakage, leakage, and fire, incoming freight, stationery used by the people in the storerooms, postage, maintenance of office and store equipment such as lift trucks within the storerooms, scales and other items. In the instant case Ave are concerned solely with the cost of reproduction of the bare pole. There Avas no testimony Avith regard to Avircs or hardAvare. (Cf. New York State Elec. & Gas Corp. v. Fischer, supra.) This item in the sum of $4.56 should not be considered a proper charge as an item of damage.
The item of overhead attributable to material should be considered a proper charge as an item of damage. The figure of $4.14 is 10% of the cost of material and “ is rounded for accounting purposes.” The actual percentage for computation of damage is 9.4%. The sum of $3.90 is a proper charge as an item of damage.
Wages paid to employees should be considered a proper charge as an item of damage. In every labor cost there must be computed Avorkmen’s compensation insurance, State unemploy *792 ment insurance, Federal unemployment, Federal old-age benefits. Labor fringe benefits, taxes and insurance in the sum of $56.79 are a proper charge as an item of damage.
Labor overhead should be considered a proper charge as an item of damage. The amount claimed, $19.94, is based upon 8% for supervision and engineering, .6% for use of small tools and .8% for clerical and accounting costs, totaling 9.4% which was “rounded to 10% for accounting convenience.” Labor overhead in the sum of $18.74 is a proper charge as an item of damage.
The cost of transportation to the site should also be considered a proper charge to the replacement though the plaintiff’s own trucks were used, and even though there was no testimony that the charge made was fair and reasonable. The item of transportation cost in the sum of $33.75 is a proper charge as an item of damage.
There should be deducted from the sum total of the items of damage, in arriving at plaintiff’s damages, $49 which was paid to plaintiff by New York Telephone Company.
Judgment should be granted in favor of the plaintiff and against the defendant in the sum of $305.02, with interest and taxable costs.