**May MORRISON, Guardian of the Estate of Brenda Vogt Tuthill, an incompetent, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 1883.

Supreme Court of Alaska.

Dec. 3, 1973.

---

9. Crim.Rule 35(h) provides in part that: "The court may order the applicant brought before it for the hearing."

William H. Fuld, of Kay, Miller, Libbey, Kelly, Christie & Fuld, Anchorage, for appellant.

Charles Hagans and Sanford M. Gibbs, of Hagans, Smith & Brown, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER and FITZGERALD, JJ.

## OPINION

FITZGERALD, Justice.

Appellant Brenda Vogt Tuthill is a minor who appears here through her guardian, May Morrison. Appellant was injured in an automobile collision which occurred in 1967, when she was a passenger in a vehicle operated by her mother. The action was brought on behalf of the appellant against her mother and the State of Alaska, the appellee here.

Appellant's claim against her mother was settled for $50,000. Her claim against the State under the Alaska Tort Claims Act,[1] resulted in a favorable judgment to her amounting to $266,000 together with prejudgment interest. Since $50,000 had been recovered on the claim against appellant's mother, the judgment against the State was reduced to $216,000.

Both appellant and appellee took appeals from the judgment. In Abbott v. State, 498 P.2d 712 (Alaska 1972), this court affirmed the trial court's findings on the liability issues but we were unable to rule on the damage issues, because the findings were found to be insufficient. The case was remanded to the superior court for more specific findings on damage issues. On remand the trial judge entered a memorandum opinion including more detailed findings. Appellant has now appealed for the second time claiming the damages awarded by the trial court are inadequate. She petitions this court to enter a proper and adequate award.

Regretfully, we conclude we must vacate the judgment and once again remand the case. We find clear error affecting two items of damage which involve substantial amounts of money.

The trial judge found that at the time of the accident appellant was 13.5 years of age and had a life expectancy of 50 years. He found as well that she had suffered a total loss of her future earning capacity as a result of injuries incurred in the collision. The trial court surmised that appellant would work five years at an annual salary of $8,000 as a secretary and would then marry. He concluded her total "lost earnings" would amount to $40,000.

We held in City of Fairbanks v. Nesbett, 432 P.2d 607, 617 (Alaska 1967) that impairment of earning capacity is the permanent diminution of the *ability* to earn money. Appellant is correct in her contention that the trial judge should have made his award for appellant's lost earning *capacity* rather than "lost earnings." It may not be assumed that because some women

become housekeepers that they thereby lose their earning capacity. The expert testimony at trial revealed that the average white Alaskan female, including women both employed and unemployed, will earn about $175,000 during her lifetime. The average white Alaskan female who remains employed throughout her career will probably earn $350,000 to $400,000.

Most jurisdictions have recognized the right of an injured housewife to recover for impaired earning capacity regardless of whether or not she was employed before the injury or intended to be so at a later date. As the court in Florida Greyhound Lines, Inc. v. Jones, 60 So.2d 396, 398 (Fla.1952), said:

> " . . . [I]t might well happen that a woman who has never earned a cent but has faithfully and successfully discharged her duties as a wife and mother would suddenly be faced, by the loss or disability of her mate, with the necessity to earn money to continue maintaining her home and rearing her brood . . . .
>
> . . . The measuring of the loss cannot be put off until another day . . . . [T]here is but one trial—and that is now."[2]

■ Appellee relies on Beaulieu v. Elliott, 434 P.2d 665 (Alaska 1967), for the general rule that a determination of damages by the trial court is a finding of fact which will not be disturbed on appeal unless clearly erroneous. We adhere to that principle. Certainly in many cases, as is true in this case, some items of damage cannot be fixed with mathematical precision. In those instances the trial judge is necessarily forced to estimate and as long as he follows the correct rules of law, and his estimation appears reasonable and is grounded upon the evidence, his finding will remain undisturbed.

■ We find no flaw in the trial judge's estimation of appellant's loss of earning capacity. However, in computing the amount of damages for this loss, the trial judge misapplied a rule of law. He concluded that appellant is not entitled to recover for impaired earning capacity following marriage. At the time of the argument on this appeal, appellee forthrightly conceded that appellant's damages could not be so limited. However, appellee contends that the trial court did make allowance for impairment of earning capacity but bulked that award into a category which he termed "lost enjoyment of life." This contention is not tenable because nothing can be found in the record to support it. Nor is it logically sound in view of the remand on the first appeal, which directed the trial court to make explicit his findings on the damage issues. Appellee's contention is mere conjecture.

■ Appellant is, of course, entitled to recover the full amount for her diminished earning capacity. This is not to say that she is necessarily entitled to the full amount which she would earn were she to be employed for her entire life. The trial court could properly allow as an offset against the overall amount a sum which reflects the fact that appellant can still function to some degree as a housewife. But even if appellant were able to function as a normal housewife, she would still be entitled to an award for impaired earning capacity, because she has lost the capacity to work in commercial enterprises.

■ Appellant suggests that this court make an award for earning capacity rather than remanding to the superior court. Although such a procedure is not unusual[3] we decline to adopt such a radical remedy in this case. The trial court is in the best position to judge the credibility of witnesses and the persuasiveness of testimony, as well as other considerations which are of importance in assessing damages in a personal injury action. We find it inappropriate in this case to bypass established principles of appellate procedure.

2. Cited with approval in Goldstein v. Walters, 126 So.2d 759, 762–763 (Fla.Ct.App.1961).

3. _E. g._, Alexander v. Nash-Kelvinator Corp., 271 F.2d 524 (2d Cir. 1959).

Appellant also contends that the trial court was in error in finding she had a life expectancy of 50 years at the time of the accident. The only evidence relating to appellant's life expectancy was a standard mortality table which revealed the average life expectancy of a 13.5 year old American female to be some 63.5 years. No evidence was presented from which it can reasonably be inferred that appellant had a shorter than normal life expectancy at the time of the accident. Nor was any reason given for disregarding the mortality table. We find the trial court's finding in this respect clearly erroneous.[4] On remand the trial court should make new findings on appellant's preaccident life expectancy. While the mortality table is not binding on the court, there must be some evidence in order to justify a departure from the table.

One other aspect of damages arising from shortened life expectancy remains for consideration. In fixing damages arising from permanent injury resulting in reduced earning capacity, the trial court must base the award on preinjury life expectancy rather than a shortened expectancy due to the injury. In such circumstances, the tort-feasor should not be able to reap the benefit of the victim's shortened life occasioned by permanent injury for which the wrongdoer is responsible. Hallada v. Great Northern Ry., 244 Minn. 81, 69 N.W.2d 673, cert. denied, 350 U.S. 874, 76 S.Ct. 119, 100 L.Ed. 773 (1955); Restatement of Torts § 924, comment (e), at 635 (1939); C. McCormick, Damages § 86, at 303–304 (1935).

However, damages for future pain and suffering and for anticipated medical and custodial care, such as were awarded in the instant case, are based on actual life expectancy at the time of trial. This is so because it would be inappropriate to award damages for future pain which will not occur, or for medical expenses which will not be incurred because of the shortened life span of the victim. Naturally, the knowledge of decreased life expectancy may lead to emotional distress or suffering which may be considered in assessing future pain and suffering.

Appellant contends that the trial court made no award for pain and suffering. It would be error, of course, for a court not to award such damages where the evidence reveals their existence. Walker v. Alaska Road Commission, 388 P.2d 406 (Alaska 1964). Such damages are often difficult to estimate with any confidence; nevertheless, it is clear that a carefully considered estimate leads to a more just result than denying all recovery to the injured victim. Clearly the plaintiff cannot and need not prove such damages with great precision.

According to the record, the trial judge at one point indicated that he could not fix a sum for pain and suffering, because the evidence was too inconclusive, even though the appellant "no doubt did suffer some pain and . . . may have some emotional suffering in the future." However, after reviewing the entire memorandum opinion, we find that the trial court reached a satisfactory determination on this issue. The court awarded $120,000 to $150,000 to appellant for "diminished enjoyment of life, including the item of pain and suffering . . . ." While it might have been preferable for the trial court to have made his estimate clearly based on pain and suffering, we are not inclined to find on the evidence in the record that the trial judge clearly erred.

Appellant argues that the trial court committed error by discounting the "actual" award to a present worth of $266,000. It is said the court discounted the award because the recovery would not be subject to federal income taxes. There is language in the trial court's memoran-

4. A trial court's factual finding is "clearly erroneous" when this court has a "firm and definite conviction" that an error has been made. Alaska Foods, Inc. v. Am. Mfr.'s Mut. Ins. Co., 482 P.2d 842, 848 (Alaska 1971).

dum opinion from which this conclusion can be inferred.[5]

In Beaulieu v. Elliott, 434 P.2d 665, 671 (Alaska 1967), we held that damages for future pain and suffering, medical expenses, and impaired earning capacity should not be discounted to present cash value. We reasoned that:

"[T]he rule for reducing awards . . . ignores facts which should not be ignored. Annual inflation at a varying rate is and has been with us for many years. There is no reason to expect that it will not be with us in the future. This rate of depreciation offsets the interest that could be earned on government bonds and many other 'safe' investments. As a result the plaintiff, who through no fault of his own is given his future earnings reduced to present value must, in order to realize his full earnings and not be penalized by reduction of future earnings to present value, invest his money in enterprises, other than those which are considered 'safe' investments, which promise a return in interest or dividends greater than the offsetting rate of annual inflation. But ours is a competitive economy. By their very nature some enterprises backed by investors' money are going to fail with resulting loss to individuals. Thus, instead of being assured of earnings at rates greater than the annual rate of inflation, the injured plaintiff stands a chance of entirely losing his future earnings by unlucky or unwise investments. Since the plaintiff, through the defendant's fault and not his own, has been placed in the position of having no assurance that his award of future earnings, reduced to present value, can be

utilized so that he will ultimately realize his full earnings, we believe that justice will best be served by permitting the trier of fact to compute loss of future earnings without reduction to present value. The plaintiff is more likely to be restored to his original condition under the rule we adopt than under the prevailing rule which calls for a discounting of the award for future earnings."

The court in *Beaulieu* also held that awards for impaired earning capacity should not be discounted by the amount of federal income tax to which such wages would be subject.

If the trial court actually decreased the damage award because of the power of money to earn money, or because of income tax immunity, this would be clear error. However, we are not convinced that the trial court violated the principles laid down in *Beaulieu*. It may be, as appellee suggests, that the court was merely attempting to gauge the overall adequacy of the award after he had determined its component parts in full compliance with *Beaulieu*. But since we are remanding the case on other grounds, the trial judge will have an opportunity to clarify his reasoning.

■ A final consideration troubles us though the problem was not dealt with in the briefs on this appeal. The trial court awarded indeterminate amounts for two categories of damages. For the loss of enjoyment of life[6] the court awarded an amount which ranged from $120,000 to $150,000, and for future custodial care the court awarded $60,000 to $90,000. The total for these two categories was $210,000. It need hardly be stated that such awards do not comply with the requirements of

5. In his memorandum opinion the trial judge reasoned:
In arriving at the sum of TWO HUNDRED SIXTY-SIX THOUSAND DOLLARS ($266,-000.00) damages allowed in this matter I considered the fact that such sum was the equivalent of an annuity for Brenda Vogt. Such sum if prudently invested, and I am assuming that Brenda's guardian will make prudent investments, will earn interest at six to eight

percent (6% to 8%) per annum. If invested in municipal type bonds the interest would be free of federal income taxes. I also considered that the fund itself is free from federal income taxes and accordingly is equivalent to a fund approximately one-third to one-half greater than the amount allowed.

6. We found that this category covered pain and suffering.

Civil Rule 52(a). On remand the trial court is directed to make specific findings in accordance with Civil Rule 52(a).[7]

Judgment vacated, case remanded for new findings.

ERWIN, J., not participating.

---

7. In addition to Abbott v. State, 498 P.2d 712, 730 (Alaska 1972), other cases pointing out the necessity of making findings sufficient to give a clear understanding of the basis of the trial court's decision and to enable the court on review to properly appraise the elements which comprise the court's award of damages include Beaulieu v. Elliott, 434 P.2d 665, 670 (Alaska 1967); Patrick v. Sedwick, 413 P. 2d 169, 174–175 (Alaska 1966); Hamilton v. Lotto, 391 P.2d 948, 949 (Alaska 1964).