CURT'S TRUCKING COMPANY and Gerald R. Curt, Appellants,

v.

CITY OF ANCHORAGE, a Municipal Corporation, Appellee.

No. 3181.

Supreme Court of Alaska.

May 19, 1978.

---

William J. Donohue, Anchorage, for appellants.

Allan E. Tesche, Asst. Municipal Atty., Anchorage, for appellee.

1. The accident occurred on January 10, 1975, at approximately 1:00 A.M.

2. Our references throughout this opinion to appellant Curt's Trucking Company are intended to include appellant Gerald R. Curt.

3. The actual amount in dispute is $891.54.

4. The case was tried to the court without a jury on June 29–30, 1976. The superior court's memorandum opinion was filed on August 26, 1976; and the municipality's proposed findings of fact and conclusions of law were adopted by the court and filed on September 20, 1976.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

OPINION

RABINOWITZ, Justice.

An overhead telephone cable belonging to the Anchorage Telephone Utility was severed when struck by the raised body of a dump truck operated by Gerald Curt on Minnesota Drive in Anchorage.[1] The Anchorage Telephone Utility is a public utility owned by the City of Anchorage; and City employees repaired the damaged cable. The City then brought an action in superior court alleging that $5,349.23 in damages resulted from the negligence of Gerald R. Curt and Curt's Trucking Company.

The parties stipulated that Curt's Trucking[2] was liable for the direct costs of repairing the damaged cable. The direct costs of material and labor amounted to $4,457.72. However, Curt's Trucking disputed the City's claim to an additional 20% for "overhead"[3] and the trial in superior court[4] was directed only to that issue.

The City introduced evidence indicating that its 20% overhead figure was derived from two separate sources: (1) general administrative overhead applicable to all reimbursable City services, comprising 13% of the 20% overhead figure, and (2) expenses incurred by the City's Risk Management Office in processing claims against third parties who damage City property. The superior court concluded that the entire 20% "overhead" charge should be allowed[5] and

5. In its findings of fact, the superior court stated:

The plaintiff, in addition, incurred, as a proximate result of the negligent act of the defendants, indirect costs for such things as office supplies, supervisors' salaries, office space cost, insurance, and the cost of preparing and presenting a bill for the cost of repair to the defendants.

A fair and reasonable estimate of the amount of indirect cost incurred by the plaintiff as a proximate result of the negligent acts of the defendants is 20% of the direct cost of performing the repairs, this figure being com-

awarded total damages in the amount of $5,349.23, *i. e.,* $4,457.72 for direct costs of labor, materials and equipment plus $891.54 for indirect costs reflected by the 20% "overhead" figure. Curt's Trucking Company has appealed, contending that the superior court's award of the 20% "overhead" charge was erroneous.

▮▮▮ A trial court's determination of damages is a finding of fact which will not be disturbed on appeal unless clearly erroneous.[6] However, we will also intervene when the trial court's award of damages is based on an erroneous application of law.[7] With these standards of review in mind, we turn to Curt's Trucking Company's first specification of error.

Curt's Trucking argues that the 13% charge for administrative expenses applicable to all reimbursable City services was not a proper element of damages because it is too remote or too speculative. Both parties have cited opinions of this court explaining that the general principle underlying the assessment of damages in tort cases is that an injured person is entitled to be placed as nearly as possible in the position he would have occupied had it not been for the defendant's tort.[8] This principle also applies where the injured party performs the repairs itself. Many courts considering this problem have concluded that indirect expenses are proper items of damage and are not too remote or speculative when the evidence establishes a sufficient connection between the overhead expense and the necessary repairs.[9]

In *Baltimore and Ohio Railroad Co. v. Commercial Transport, Inc.,* 273 F.2d 447 (7th Cir. 1960), the court affirmed the inclusion of overhead in a damage award arising out of a collision between plaintiff's diesel locomotive and defendants' tractor-trailer. The railroad had applied various overhead percentages to its costs of materials and labor; the specific percentages had been taken from formulas established by 25 major railroads for use, in part, in billing each other for self-repair of their own track or equipment damaged by another railroad.[10] The Seventh Circuit concluded that the reasonable cost of repairs made by the railroad's own employees should not be limited to the dollar amount actually paid workmen and suppliers because "[s]uch a limitation would ignore the facts of business life."[11] The court also determined that the percentage formulas were properly submitted to the jury:

> On the basis of the facts adduced in the instant case as to the establishment of

---

prised of 7% to cover the cost of preparing and presenting a bill to the defendants and 13% for all other indirect costs.

**6.** *State v. Guinn,* 555 P.2d 530, 544–45 (Alaska 1976); *Morrison v. State,* 516 P.2d 402, 405 (Alaska 1973). A finding is clearly erroneous only when, although there may be evidence to support it, the court is left with the definite and firm conviction on the entire record that a mistake has been committed. *State v. Guinn, supra* at 534–35 (Alaska 1976). *See Arctic Contractors, Inc. v. State,* 564 P.2d 30, 46 (Alaska 1977); *Kaatz v. State,* 540 P.2d 1037, 1041 (Alaska 1975).

**7.** *See State v. Guinn,* 555 P.2d 530, 545 (Alaska 1976); *Morrison v. State,* 516 P.2d 402, 405 (Alaska 1973).

**8.** *ERA Helicopters, Inc. v. Digicon Alaska, Inc.,* 518 P.2d 1057, 1059–60 (Alaska 1974); *State v. Stanley,* 506 P.2d 1284, 1293 (Alaska 1973); *Beaulieu v. Elliott,* 434 P.2d 665, 670–71 (Alaska 1967).

**9.** *See* Annot., 3 A.L.R.3d 689, 710–11 (1965 and 1977 Supp.).

**10.** The railroad contended that such percentages reflected its cost for overhead including: supervision; depreciation on buildings, machinery, equipment and tools; indirect expense for insurance, freight charges, record keeping and stenographic services; a proportionate share of costs for employees' paid vacations and holidays; and taxes and contributions for unemployment compensation, railroad retirement and health and welfare benefits. *Baltimore & O.R.R. Co. v. Commercial Transport, Inc.,* 273 F.2d 447, 448–49 (7th Cir. 1960).

**11.** *Id.* at 449. The court relied upon the Sixth Circuit's opinion in *Ford Motor Co. v. Bradley Transportation Co.,* 174 F.2d 192 (6th Cir. 1949). In *Bradley,* plaintiff recovered for damages which occurred when its unloading equipment was struck by defendant's steamer. The court affirmed the award of overhead expenses based upon figures applied to all of plaintiff's government contracts.

the percentage formulae contained in the Rules of the General Managers Association, and their long use and continued acceptance in the industry, we are of the opinion that the district court did not err in admitting the testimony and exhibit in question. This evidence was material and relevant in proof of plaintiff's damages. It is infrequent that damages are measurable with mathematical certainty or that a plaintiff can prove all elements from his own records or experience. The factors here employed and submitted for the jury's consideration were not designed to produce a profit. Methods accepted in everyday business affairs as fixing fair measures of value are not to be excluded from a jury's consideration in arriving at damages.[12]

Other federal courts have also permitted recovery of properly calculated overhead expenses.[13] In *Bultema Dock & Dredge Co. v. Steamship David P. Thompson*, 252 F.Supp. 881 (W.D.Mich.1966), plaintiff recovered overhead expenses in connection with repair of its underwater construction project, which had been struck by defendant's vessel. The district court explained, in part:

Had it been necessary for an outside company to repair the damage, the cost of such repairs would include similar charges. There is no reason to free respondent of these costs simply because the injured party is in a position to make the repairs itself.[14]

However, in *Crain Brothers, Inc. v. Duquesne Slag Products Co.*, 273 F.2d 948, 952–53 (3d Cir. 1959), the Third Circuit explained that the reason a party which performs its own repairs may recover an amount including such overhead elements is that its actual loss would be the full amount charged by the independent contractor, as if it paid that amount out-of-pocket. Thus, where plaintiff has carried out the repairs itself, the losses and expenses actually incurred as a result of the accident should be included in a damage award. Costs which would have been recoverable had plaintiff hired someone else to do the work are a useful indicator of reasonable costs of repair only if plaintiff actually expends such an amount.[15]

Although state courts are not unanimous in awarding overhead expenses,[16] many

---

**12.** *Id.*

**13.** *See, e. g., Freeport Sulphur Co. v. S/S Hermosa*, 526 F.2d 300, 304 (5th Cir. 1976); *United States v. Commercial Am. Barge Line Co.*, 424 F.Supp. 453 (E.D.Mo.1977); *Department of Water & Power v. United States*, 131 F.Supp. 329 (S.D.Cal.1955) (noting similarity of California and federal rules); *United States v. Delaware Bay & River Pilots Ass'n*, 10 F.Supp. 43 (E.D.Pa.1935). *But see Indiana Harbor Belt R. R. Co. v. Soo Line R. R. Co.*, 365 F.Supp. 867 (N.D.Ill.1973) (federal jurisdiction based on diversity; opinion applied rule expressed in *Central Ill. Light Co. v. Stenzel, infra* note 16); *cf. Creole Shipping Ltd. v. Diamandis Peteras, Ltd.*, 410 F.Supp. 313 (S.D.Ala.1976) (distinguishing *Freeport Sulphur Co. v. S/S Hermosa, supra*).

**14.** 252 F.Supp. 881, 886 (W.D.Mich.1966). The court was discussing the award of both profit and overhead. In *Bultema,* the overhead expenses were actually incurred when the repairs were made. For a federal case permitting recovery of overhead as part of estimated damages when no repairs were actually undertaken, *see United States v. Delaware Bay & River Pilots Ass'n.*, 10 F.Supp. 43 (E.D.Pa. 1935).

**15.** The court was actually discussing the question whether a self-repairing plaintiff should be permitted to recover a profit item as part of its damages. We believe its reasoning applies as well to recovery of overhead expenses.

**16.** *Central Ill. Light Co. v. Stenzel,* 44 Ill. App.2d 388, 195 N.E.2d 207 (1963) (damage to utility's transmission pole by truck), is a frequently cited case in which recovery of overhead was denied. The court concluded that overhead expenses were too remote and speculative. "[Such costs] are fixed and continuing expenses of operation that are in no way dependent upon and bear no relation to the negligent act of the defendant . . . ." *Id.* 195 N.E.2d at 212. However, later Illinois cases have substantially undercut the *Stenzel* position by permitting recovery of overhead where the measure of indirect costs was well-established. *See Chicago, B. & Q. R. R. Co. v. Ommen,* 130 Ill.App.2d 713, 264 N.E.2d 535 (1970) (recovery permitted when plaintiff was billed for self-repair of damaged equipment by third party).

have concluded that such costs are properly included in damage awards.[17] Courts permitting recovery generally have required plaintiffs to show that the claimed indirect costs were actually incurred and that the formula used to calculate overhead was accurate. Sufficient accuracy has been found where the overhead calculation was based on sound accounting principles;[18] where the accounting methods used to allocate indirect expenses had been approved by government regulatory bodies;[19] or where the formulas were widely accepted in plaintiff's trade or business as correct measures of overhead when self-repairs are performed.[20]

■ We are persuaded that a party which repairs property tortiously damaged by another should be permitted to recover indirect expenses incurred in making such repairs if its calculation of overhead is shown to be a fair and reasonable measure of actual costs. A plaintiff need not identify the particular dollar amount of each overhead component which was expended in connection with specific direct costs; it is sufficient if reasonably accurate formula allocations or percentages are used to calculate the overhead. Whether such estimates are sufficiently accurate must be determined from all the facts and circumstances of the particular case.

In the case at bar, the City introduced the deposition of its internal auditor, Lawrence Campbell, a certified public accountant who explained how the 13% charge for administrative costs of reimbursable City services

had been calculated. Campbell stated that the City performs a variety of services for which it recovers its costs. These services are known as "reimbursable City services," and they range from thawing water pipes for private citizens to maintaining streets for the state highway department. Included in "reimbursable City services" are repairs to property damaged by third parties. In 1971 Campbell conducted a study and determined that the average overhead attributable to all City departments which perform reimbursable services was approximately 13%. He re-evaluated the 13% figure in 1974 and concluded that it fairly represented the overhead. In Campbell's opinion, the 13% figure accurately reflected the average administrative costs actually incurred by the City in performing repairs, and he stated that the percentage had been derived in accordance with sound accounting practices.

Curt's Trucking called its own expert witness, Frederick M. Strand, a certified public accountant who was present at the taking of Campbell's deposition. Strand observed that the 13% overhead figure had been computed in accordance with sound accounting principles. Curt's Trucking Company introduced no other evidence suggesting that the overhead figure was not an accurate measure of the indirect costs actually incurred in connection with repairing the damaged telephone cable.

■ As noted previously, we have determined that overhead expenses incurred by a party in repairing its damaged property are

---

17. *See, e. g., Reliable Elec. Co. v. Clinton Campbell Contractor, Inc.,* 10 Ariz.App. 371, 459 P.2d 98 (1969); *Conditioned Air Corp. v. Rock Island Motor Transit Co.,* 253 Iowa 961, 114 N.W.2d 304 (1962) (applying a federal statute which required recovery for "full actual loss"); *Northwestern Bell Tel. Co. v. Woodmen of the World Life Ins. Soc.,* 189 Neb. 30, 199 N.W.2d 729 (1972); *New York State Elec. & Gas Corp. v. Fischer,* 24 A.D.2d 683, 261 N.Y. S.2d 310 (1965), *cf. Geddes & Smith, Inc. v. Saint Paul Mercury Indem. Co.,* 63 Cal.2d 602, 47 Cal.Rptr. 564, 407 P.2d 868 (Cal.1965) (overhead awarded in connection with plaintiff's replacement of defective doors which had been purchased from defendant's insured and installed by plaintiff in houses it was building).

18. *See, e. g., Hartford Elec. Light Co. v. Beard,* 3 Conn.Cir. 323, 213 A.2d 536 (App.1965); *New York State Elect. & Gas Corp. v. Goettsche,* 48 Misc.2d 786, 265 N.Y.S.2d 809 (Sup.Ct.1965), *aff'd.,* 26 A.D.2d 968, 275 N.Y.S.2d 1023. *But see Louisiana Power & Light Co. v. Smith,* 343 So.2d 367 (La.App.1977).

19. *See Wisconsin Tel. Co. v. Reynolds,* 2 Wis.2d 649, 87 N.W.2d 285 (1958).

20. *Compare Chicago, B. & O. R. R. Co. v. Ommen,* 130 Ill.App.2d 713, 264 N.E.2d 535 (1970), *with Illinois Cent. R. R. Co. v. Cullen,* 235 So.2d 154 (La.App.1970).

proper items of damages if such costs actually have been expended and have been allocated accurately to the repair work. In the case at bar, the superior court applied the correct principles of law in permitting recovery of these costs. In addition, the record contains nothing which indicates that the 13% overhead calculation was inaccurate. Thus, we conclude that the award of 13% of the direct costs was not clearly erroneous.

Curt's Trucking Company next asserts that the additional 7% charge representing expenses of the City's Risk Management Office are not proper items of damage because they are in the nature of costs incurred in preparing for litigation. The record shows that the 7% figure was derived in a different manner than the 13% charge associated with the cost of making repairs. The City's internal auditor, Lawrence Campbell, testified that his administrative cost study which established the 13% figure did not consider the Risk Management Department's expenses because the office had not yet been created. Both Campbell and Frederick Strand, the expert called by Curt's Trucking, stated that the functions presently performed by the Risk Management Office were formerly spread among the City's various departments. Thus, to the extent these activities were carried on by departments which performed reimbursable City services, the costs associated with claims preparation may have been reflected in the 13% overhead calculation.[21] Edward Hite, head of the City's Risk Management Office, testified that to the extent claims processing occurred prior to creation of his position in 1973 it was conducted by personnel within the utility which had suffered damage. However, Hite stated that many of his office's functions had never been performed prior to 1973.

Hite also described the tasks of the Risk Management Office in some detail. According to Hite, his office collects information about the incident, takes statements of employees involved, coordinates with any police investigation, determines whether the other party was negligent, evaluates the validity of potential claims, consolidates possible claims of different departments arising out of the same incident, estimates damages or costs of repair, and sends the claim to an adjuster for collection or to the City's insurance company. Hite explained that the Risk Management Office does not send out investigators and rarely corresponds with the people who have damaged City property or with their insurors. On cross-examination, counsel for Curt's Trucking asked Hite what his office actually does with respect to a claim; Hite stated, in part:

> The same thing you as an . individual would do if someone came along and smashed into your car. You're going to take that car down and get yourself an estimate on it. You may have to go to three different places. You're probably going to have to arrange for a rental car. You're going to sit down and try to figure out how much money you have been out and you're probably going to end up arguing with an adjusting firm on how much money you have really got coming. And you're going to spend an hour or two and probably a lot of tears in trying to get your money. . . . Someone has come along and damaged our goodies and we're going to try to get our money back for the damage that is done. Someone from the municipal point of view has got

---

**21.** It is not entirely clear from the record whether double recovery would result from employing both the 13% and 7% figures. Our disposition of the 7% charge makes determination of that issue unnecessary.

Even if the testimony could be understood as suggesting that some costs of preparing claims possibly were included in the 13% overhead figure as computed in 1971, we are not persuaded that the superior court's allowance of the full 13% was clearly erroneous. Both parties' accounting witnesses agreed that a 13% charge accurately reflected the indirect costs to the City of making repairs; no evidence was introduced to indicate that unrelated costs had been included. In addition, Campbell testified that his 1974 reevaluation of the 13% figure showed it was still accurate; in March, 1973 the City's risk manager had taken over claims processing functions which previously had been performed by the individual utilities.

to keep track of that money. Someone's got to keep track of who owes whom and what we're going to pay and why we're going to pay it. And if we don't, we're not handling your tax money right.

Hite further testified that the 7% charge was chosen after Hite had consulted with an insurance adjusting firm to determine an appropriate estimate. In 1975, Hite checked this estimate by comparing a portion of the risk management costs to the total claims against others for damage to city property. He derived the percentage by calculating the office expenses associated with processing claims against parties that have damaged city property and then dividing that figure into the total dollar amount of such claims.

■ Assuming for purposes of discussion that the 7% figure accurately represents the City's cost of processing the claim against Curt's Trucking Company, we believe the item was not recoverable as overhead because it does not represent the indirect costs of repairing the City's property. In our view, claims processing expenses are more properly characterized as costs incurred in safeguarding the City's claims prior to litigation than as overhead incurred in repairing city property. Hite's testimony indicates that his office takes no direct role in facilitating the City's repair work. The Risk Management Office performs functions which are undoubtedly important to the City's fiscal accountability and to its efficient use of financial resources. However, testimony of the City's internal auditor indicates that risk management costs were excluded from the calculation of overhead associated with reimbursable City services, i. e., from the figure reflecting indirect costs incurred in repairing the cable.

Indeed, to characterize the expenses of the Risk Management Office as overhead associated with repair of City property would permit recovery of expenditures which would have been made on the claim without regard to whether the City undertook its own repairs. Award of the 7% charge, in effect, would permit the City to recover the cost of protecting its legal claim in the guise of indirect costs associated with reimbursable City services.

Even if the 7% charge is not properly includable as overhead, the question remains whether it was recoverable on some other basis. We are persuaded that the costs of the Risk Management Office—as they pertain to the damage caused by Curt's Trucking—are analogous to expenses incurred in protecting a claim or preparing for litigation.

■ Whenever tortious injury is inflicted, the party suffering harm faces, at a minimum, disruption and inconvenience. In the process of protecting a claim and acting upon it, an injured party usually expends time, effort and money. Some of these items are readily quantifiable, while others either defy valuation entirely or are measurable only when the party suffering damage is a large organization with a specialized division to conduct the necessary claims activities. Such costs normally should be regarded as unrecoverable expenses which arise due to the inherent friction within our system of damage recovery through civil litigation.[22] As such, they are not properly included as items of damage.

Affirmed in part and reversed in part.

---

22. *See generally Rimer v. State Farm Mut. Automobile Ins. Co.,* 248 S.C. 18, 148 S.E.2d 742 (1966).